IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02601-SBP

K.T.,

    Plaintiff,

v.

MARTIN J. O'MALLEY,[1] Commissioner of Social Security,

    Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

    This civil action is before the court pursuant to Title II, 42 U.S.C. §§ 401, *et. seq.*, and Title XVI, 42 U.S.C. § 1381, *et seq.*, of the Social Security Act ("the Act"), for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff[2] K.T.'s applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth in this order, the Commissioner's decision is **AFFIRMED**.

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[2] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

## BACKGROUND

Plaintiff filed DIB and SSI applications on February 10, 2019, claiming that he has been disabled since October 10, 2019. AR: 335, 337, 424.[3] Plaintiff was 55 years old on his disability onset date. AR: 135, 147. He has at least a high school education. AR: 425. Plaintiff reported past work as a boat captain, chief mate, custodian, delivery driver, and service custodian. AR: 426. In his applications, Plaintiff asserted that he was disabled due to the physical impairments of blindness and/or low vision with color blindness, lower back arthritis, arthritis, asthma, high blood pressure, high cholesterol, and herniated disc, as well as the mental impairments of anxiety and depression. AR: 136, 148, 338, 424.

An Administrative Law Judge ("ALJ") held an evidentiary hearing, AR: 98-132, and on March 10, 2022, issued a ruling denying Plaintiff's DIB and SSI applications. AR: 19-32. The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's decision, rendering it final on August 8, 2022. AR: 1-7. Plaintiff timely filed his complaint with this court seeking review of the Commissioner's final decision. ECF No. 1. All parties consented to the jurisdiction of a magistrate judge, ECF No. 10, and jurisdiction is proper pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## DIB/SSI FRAMEWORK[4]

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial

---

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record. The administrative record is found at ECF No. 9.

[4] The court here cites relevant sections of Part 404 of Title 20 of the Code of Federal

gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v) (DIB evaluation of disability of adults). If it can determine if the claimant is disabled or not at a step, the SSA makes the determination and does not continue to the next step. 20 C.F.R. § 404.1520(a)(4). However, if it cannot make that determination, the Commissioner proceeds to the next step. *Id.*

---

Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations are found in Part 416 of Title 20, relating to supplemental security income benefits. The analysis in this Opinion encompasses the identical regulations covering supplemental security income benefits, even if not specifically referenced.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under 20 C.F.R. § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." 20 C.F.R. § 404.1520(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)). If the claimant's "severe impairment" prevents them from doing their "past relevant

work" or they have no "past relevant work," the analysis continues to the final step. 20 C.F.R. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors— "age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy (either in the region where [they] live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If the claimant "can make an adjustment to other work," they are "not disabled." 20 C.F.R. § 404.1520(g).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden of proof at step five to prove there is other work the plaintiff can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove her RFC. 20 C.F.R. § 404.1560(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ's DECISION

In her final decision, the ALJ applied the five-step sequential process for determining whether an individual is disabled outlined in 20 C.F.R. § 404.1520(a) and § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his October

5

10, 2019, onset date. AR: 21. At step two, the ALJ found, as relevant here, that Plaintiff had the severe physical impairment of degenerative disc disease of the lumbar spine. *Id.* The ALJ concluded, at step three, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the disability regulations deemed to be so severe as to preclude substantial gainful employment. AR: 22-25.

The ALJ next determined that Plaintiff had the RFC to perform "medium" work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c),[5] "including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently," and he "can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs, and can occasionally climb ladders, ropes, or scaffolds." AR: 26. The ALJ also found numerous mental RFC limitations. *Id.*

At step four, the ALJ found that Plaintiff was, based on his assessed RFC, able to perform his past relevant work as an industrial cleaner and delivery driver, as those occupations are generally performed. AR: 30-31. The ALJ therefore concluded, at step four, that Plaintiff was not disabled. AR: 31.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S.

7

357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

On appeal, Plaintiff asserts a single claim of error—that the ALJ failed to properly evaluate the medical opinion provided by the consultive examiner, William H. Qutub, M.D.

An ALJ has a duty to "give consideration to all the medical opinions in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and must articulate how persuasive she finds each medical source opinion. 20 C.F.R. §§ 404.1520c, 416.920c.[6]

The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative

---

[6] For readability, the court will omit citations to the SSI regulations that parallel those for DIB claims.

medical finding. *Id.* § 404.1520c(c). The regulations instruct that the factors of supportability and consistency "are the most important factors." *Id.* § 404.1520c(b)(2).

The supportability factor considers whether the medical source's opinion is supported by "objective medical evidence" and "supporting explanations;" "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be." *Id.* § 404.1520c(c)(1) (cleaned up).

The consistency factor requires a comparison between the medical source's opinion and "the evidence from other medical sources and nonmedical sources" in the record. *Id.* § 404.1520c(c)(2). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Id.* (cleaned up)

Social Security regulations do not "prescribe the depth at which the ALJ must discuss" the factors of supportability and consistency. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). But at a minimum, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022).

   A.   **Dr. Qutub's opinion and the ALJ's findings**

On March 27, 2021, Plaintiff underwent a physical examination with Dr. Qutub. AR: 939-45. Dr. Qutub thereafter provided a functional assessment which opined that Plaintiff's

9

physical limitations were as follows:

> I. Seated: The number of hours he should be able to sit during a normal 8-hour workday is about 4-6. When analgesics are being used, normal office-type break periods appear satisfactory.
>
> II. Standing: The number of hours he should be able to stand during a normal 8-hour workday is about 4-6. Similar rationale as above.
>
> III. Walking: The number of hours he should be able to walk during a normal 8-hour workday is about 4-6. Similar rationale as above as symptom mitigation occurs with mobility.
>
> IV. Weight Bearing:
> Lifting: The amount of weight he should be able to lift, frequently and occasionally, is about 5-10 pounds and 10 pounds, respectively. Severe disc herniation with recent soft tissue imaging.
> Carrying: The amount of weight he should be able to carry, frequently and occasionally, is about 5-10 pounds and 10 pounds, respectively. Similar rationale as above.
>
> V. Postural Recommendations: Bending, stooping, squatting, crouching, and/or crawling activities should be feasible occasionally.
>
> VI. Manipulative Recommendations: There are no recommended manipulative limitations recommended, such as reaching, pushing, pulling, handling, grasping, fingering, and/or feeling.
>
> VII. Assistive Devices: There are no assistive devices recommended at this time.
>
> VIII. Visual, Communicative, Other Workplace Environmental:
> Visual limitations are not recommended.
> Communicative limitations are not recommended.
> Environmental capabilities are recommended frequently. However, a variety of psychosocial stressors may have an impact.
> Defer to mental status evaluation if appropriate.

AR: 944.

The ALJ found that Dr. Qutub's opinion as to Plaintiff's functional limitations—which amounted to a reduced range of sedentary work—was not supported by his own examination, and was inconsistent with the overall medical record, and thus was unpersuasive. AR: 29.

The ALJ's order indicates, as a general matter, that she considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c. AR: 26. The ALJ also properly noted that she "cannot defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion(s), including those from medical sources." AR: 29. Then, when assessing the persuasiveness of Dr. Qutub's opinion the ALJ found that

> Dr. Qutub's mostly normal examination except for observations of lumbar tenderness and some pain with range of motion testing is not supportive of his recommendations. The overall record, which reflects mostly normal physical examinations and the conservative treatment history are not consistent with these findings. Moreover, the claimant's daily activities are not consistent with Dr. Qutub's statements. This involved a one-time exam. The claimant actually reported that he was active physically, hunting, fishing, etc. Dr. Qutub did not provide any detailed narration as to his findings, other than noting that the lifting/carrying restrictions were due to severe disc herniation with recent soft tissue imaging. However, he earlier had noted in reaching a diagnosis of degenerative lumbar disc disease that radiculopathy was not evident; physical therapy appears to have helped mitigate his symptoms overall; and repeat imaging might demonstrate some improvement compared to prior images. The State agency medical examiners reviewed these findings and found it not well supported. Therefore, Dr. Qutub's statements are unpersuasive.

*Id.* (citing AR: 944).

Plaintiff challenges the ALJ's determination that Dr. Qutub's opinion was unpersuasive.

### B.     Supportability

When finding that Dr. Qutub's opinion was not supported by his own examination, the

ALJ relied on the fact that the exam was mostly normal, except for observations of lumbar tenderness and some pain with range of motion testing. AR: 29. In addition, the ALJ relied on the fact that Plaintiff reported to Dr. Qutub that he was physically active in that he went hunting and fishing. Finally, Dr. Qutub based his opinion as to Plaintiff's lifting/carrying restrictions on "[s]evere disc herniation with recent soft tissue imaging," which the ALJ found was "without any other detailed narration as to his findings" and was contrary to Dr. Qutub's earlier determination that "radiculopathy was not evident; physical therapy appears to have helped mitigate his symptoms overall; and repeat imaging might demonstrate some improvement compared to prior images." *Id.*

This evidence is more than sufficient to support the ALJ's determination that Dr. Qutub's opinion of Plaintiff's physical limitations was not supportable by his own examination findings. *See Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) (court must "determine whether [the ALJ's assessment of persuasiveness] is supported by such relevant record evidence as a reasonable mind might accept as adequate to support a conclusion") (citation and internal quotation marks omitted). This court respectfully disagrees with Plaintiff to the extent he argues that some of Dr. Qutub's examination findings do, in fact, support his opinion and, thus, the ALJ improperly engaged in "a selective reading of the examination findings" when ruling that "Dr. Qutub's mostly normal examination except for observations of lumbar tenderness and some pain with range of motion testing is not supportive of his recommendations."[7] *See L.M.M. v. Kijakazi*, No. 21-CV-02036-JLK, 2022 WL 17104585,

---

[7] Specifically, Plaintiff refers to Dr. Qutub's observations that although Plaintiff arose spontaneously and unaided from a seated position "he appeared mild-moderately uncomfortable

at *7 (D. Colo. Nov. 22, 2022) (acknowledging that an ALJ is not entitled to pick and choose from a medical opinion, but affirming the ALJ's determination that an opinion lacked persuasiveness when it relied on other parts of the record to support her conclusion) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). The record here does not show that the ALJ ignored the probative contrary evidence, and only selectively chose the finding supporting her determination. Rather, the ALJ's reasoning for finding Dr. Qutub's opinion unpersuasive—and that the contrary opinions of the prior administrative medical findings were persuasive, AR: 29—constitutes an appropriate reconciliation of conflicting medical opinions of record. *D.J. v. Kijakazi*, No. 21-cv-02864-REB, 2022 WL 1663120, at *4 (D. Colo. May 25, 2022) ("It is not cherry picking for the ALJ to discharge his duty and prerogative to consider and reconcile conflicts in the evidence, particularly conflicts between the medical opinions of record.") (citing *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988); *Ghini v. Colvin*, 82 F. Supp. 3d 1224, 1233 (D. Colo. 2015)).

### C. Consistency

In determining that Dr. Qutub's opinion was not consistent with the other record evidence, the ALJ found that the overall record "reflects mostly normal physical examinations and the conservative treatment history" and, in addition, that the State agency medical examiners "reviewed these findings and found [them] not well supported." AR: 29.

Again, the ALJ's determination that Dr. Qutub's opinion was not consistent with the

---

in doing so" and moved similarly throughout the consultation, ECF No. 11 at 13 (citing AR: 941), and that Dr. Qutub's examination revealed compromised range of motion testing in several areas. *Id.* (citing AR: 941-43).

medical record is supported by substantial evidence. *See Lenoble*, 2022 WL 16855693, at \*7; *Smallwood v. Kijakazi*, Civ. No. 21-446 GBW, 2022 WL 4598499, at \*3 (D.N.M. Sept. 30, 2022) (collecting cases and noting that "courts have affirmed 'minimalist' supportability and consistency findings as long as the ALJ points to some evidence in such a way that the Court can follow the ALJ's reasoning."). Plaintiff asserts that the ALJ's decision that Dr. Qutub's opinion was inconsistent with the "overall record, which reflects mostly normal physical examinations" is overly broad and conclusory, and that the ALJ "did not provide any evidentiary support for this conclusion." ECF No. 11 at 13. Plaintiff then cites to specific instances in the record indicating examination findings by other sources that Plaintiff contends contradict an overall record of "normal physical examinations."[8] *Id.* However, as set forth in the ALJ's decision, the medical record is replete with normal test results and findings on examination. AR: 22-30. Plaintiff is, in essence, improperly asking this court to reweigh the medical evidence. *See Knight*, 756 F.3d at 1175 (this court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency") (citations omitted); *Zoltanski*, 372 F.3d at 1200 (the court may not "displace the Commissioner's choice between two fairly conflicting views").

Moreover, Plaintiff does not challenge the ALJ's reliance on his conservative treatment

---

[8] Plaintiff referred this court to records dated June 26, 2019 (when he was observed to have a slow and cautious gait, lumbar range of motion testing revealed pain, hip flexion and abduction was somewhat limited, and knee flexion and extension was also somewhat limited) (citing AR: 1056); August 9, 2019 (when examination revealed tenderness at L4-S1, pain with flexion, and mildly reduced extension and flexion, as well as abnormal findings related to his right leg and foot, and a positive seated straight leg test on the right) (citing AR: 757); and January 17, 2020 (revealing 75% ability to right and left side bend, pain with flexion and bilateral side bending, some limited range of hip flexion and abduction, as well as knee flexion and extension, and a slow and cautious gait) (citing AR: 980-86). ECF No. 11 at 13.

history and the State agency medical examiners' conclusions that Dr. Qutub's findings were "not well supported." *See Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *6 (10th Cir. Oct. 28, 2022)[9] (allowing the contrary opinions of the non-examining state agency consultants as evidence of inconsistency). Contrary to Plaintiff's argument here, this is not a case in which the ALJ "provided no evidentiary support or further analysis to connect this proposition to the required consistency and supportability factors." *Alarcon v. Kijakazi,* No. 21-CV-0411 SMV, 2022 WL 4598476, at *4 (D.N.M. Sept. 30, 2022); *see also Nielsen*, 2022 WL 15570650, at *5 (noting that as long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements).

In sum, the ALJ adequately articulated how she considered the supportability and consistency of Dr. Qutub's opinion in finding it unpersuasive and pointed to substantial evidence in support.

## CONCLUSION

For the foregoing reasons, the court finds that the Commissioner's final decision is supported by substantial evidence in the administrative record and applies the correct legal standards. Consequently, the court finds no grounds warranting reversal or remand. Accordingly,

---

[9] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

the court **AFFIRMS** the ALJ's determination that Plaintiff is not disabled. The Clerk of Court shall enter judgment in the Commissioner's favor and close this civil action.

Dated: September 19, 2024.                    BY THE COURT:

 

_____
Susan Prose
United States Magistrate Judge